IN THE

## SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1845, IN THE TWENTY-NINTH
YEAR OF THE STATE.

---

## CONNER and Another *v.* MYERS.

Courts of equity will follow the law in the construction of the statute of usury.

But on bill filed to be relieved against an usurious contract, the complainant will be required to pay the defendant what is *bona fide* due to him, deducting the usurious interest.

The bill must show that such payment has been made, or it must contain an offer to make it.

When a borrower has paid the money upon an usurious contract, a Court of equity will assist him to recover back the excess paid beyond principal and lawful interest.

ERROR to the *Fayette* Circuit Court.

*Monday, May 26.*

SULLIVAN, J.—Chancery.   The bill sets forth the following facts: On the 6th of *February*, 1829, one *John Conner* borrowed of the defendant 75 dollars, and gave his note payable on the 1st of *May* following, bearing interest at the rate of 25 *per cent. per annum.*   On the 18th of *June*, 1832, *John Conner* executed another note to the defendant for the sum of 103 dollars payable on the 1st of *December*, 1833, bearing like interest as the first note.   The second note, it is alleged, was given for the usurious interest that had accrued on the

first note, and as " a bonus for a disappointment" in the non-payment of the note for 75 dollars when it fell due. On the 9th of *August*, 1836, *John Conner*, together with *J. M. Conner*, one of the complainants, as his surety, executed to the defendant a third note for the sum of 200 dollars, the consideration of which was the interest on the first and second notes calculated at the rate of 25 *per cent. per annum.*

On the 4th of *March*, 1838, the complainants purchased from *John Conner* a farm in the county of *Fayette*, and assumed the payment to *Myers* of the above-described notes. On the 9th of *August* following, the complainants and *Myers* accounted together of the interest then due on the several notes, and, computing the interest at the rate of 25 *per cent. per annum*, the sum of 131 dollars and 50 cents was found to be due. The complainants thereupon paid to *Myers* the sum of 115 dollars and 50 cents part of said interest money, and one of them, *James M. Conner*, gave his note to *Myers* for the residue, being 16 dollars. On the 10th of *August*, 1840, the complainants, in further discharge of said debts, assigned to *Myers* two land-certificates for 164 acres of land in *Wabash* county, being part of the lands granted for the construction of the *Wabash* and *Erie* canal. The land was estimated by the parties to be worth 600 dollars, from which, however, was to be deducted the sum of 184 dollars and 50 cents, a balance still due to the state, which was a lien upon the land, and which *Myers* agreed to pay. The note for 200 dollars, and the note of *J. M. Conner* for 16 dollars, were then given up to the complainants, but the note for 75 dollars, and the note for 103 dollars, were retained by *Myers*. The bill charges that the conduct of *Myers* in the foregoing transactions was illegal, oppressive, and usurious; that the whole amount of money loaned or advanced by *Myers* to *John Conner* or to the complainants was 75 dollars only; and that the whole indebtedness was discharged before the assignment of the land-certificates, &c. The prayer of the bill is for a re-assignment of the land-certificates and for general relief.

The answer of *Myers* admits the execution of the notes set out in the bill. He says that the note for 75 dollars did not stipulate for any rate of interest whatever. He says that the note for 103 dollars was for interest due on the first note, and for other demands he had against *John Conner*, and that

it bore 25 *per cent.* interest. He admits that at the time he received the note for 200 dollars, as well as at the time of the assignment of the land-certificates, "interest was understood to have been computed on the note for 75 dollars and the note for 103 dollars at the rate of 25 *per cent. per annum.*" He admits the payment of 115 dollars and 50 cents as alleged by the complainants; that the land-certificates had been assigned to him; and that the land was valued at 600 dollars.

A replication was filed and depositions were taken. At the hearing, the Court dismissed the bill for want of equity.

In the examination we have given this case, we have not inquired whether the note for 103 dollars, and the note for 200 dollars, were given on a valid and binding consideration or not. If *John Conner* were the complainant here, it may be that he would be entitled to relief of a very different character from that which these complainants have a right to ask. They received from *John Conner* a farm, in consideration of which they undertook to pay the notes above described, with all the interest upon them that could be legally demanded. Have they done so, is the question to be settled. If they have, it is all that *Myers* can require of them, and more perhaps than he could have enforced against *John Conner.* Courts of equity will follow the law in the construction of the statute against usury, but on bill filed to be relieved against an usurious contract, they will require the plaintiff to pay to the defendant what is really and *bona fide* due to him, deducting the usurious interest; and it must appear in the bill that it has been done, or an offer to do so must be made.

The evidence in the cause satisfies us, that all that was legally due to the defendant on the three notes of *John Conner* was paid by the assignment of the land-certificates. The note for 75 dollars was given at a time when, by law, not more than 6 *per cent. per annum* could be demanded. So with the note for 200 dollars, unless a higher rate of interest were stipulated for in writing, but then it could not exceed 10 *per cent.*, and we have no evidence that this note contained such a stipulation. The note for 103 dollars was given at a time when the law allowed any rate of interest that the parties might contract for. By calculating the interest on the note for 75 dollars, and on the note for 200 dollars, at the rate of 6 *per cent. per annum*, and on the note for 103 dollars at

May Term, 1845.

the rate of 25 *per cent. per annum*, from the 9th of *August*, 1836 (at which time the interest on the first and second notes was settled by the note for 200 dollars) to the 10th of *August*, 1840, when the land-certificates were assigned, and estimating the land, after deducting the 184 dollars and 50 cents due to the state, to be worth 415 dollars and 50 cents, and applying the 115 dollars and 50 cents paid on the 9th of *August*, 1838, to the note bearing 25 *per cent. interest*, the debt is overpaid. As the parties did not make the application of that payment, it is the duty of the Court to do it, and it should be done in reduction of the debt that is most oppressive and unconscientious.

When a borrower has paid the money upon an usurious contract, a Court of equity will assist him to recover back the excess paid beyond principal and lawful interest (1). But that rule will not apply in this case. The complainants are not the borrowers. They assumed the payment of the notes for a valuable consideration paid to them by the borrower. He is the sufferer, not the complainants.

From the view we have taken of the case, the Circuit Court erred in dismissing the bill.

*The Court* reversed the decree with costs, and decreed that the note for 75 dollars and that for 103 dollars were satisfied, and should be delivered up, &c.

*C. B. Smith* and *J. A. Fay*, for the plaintiffs.

*S. W. Parker*, for the defendant.

(1) The excess may also be recovered in an action at law. *Smith* v. *Bromley*, Dougl. 696, note.—*Browning* v. *Morris*, Cowp. 790.—*Bond* v. *Hays*, 12 Mass. 34.—*Wheaton* v. *Hibbard*, 20 Johns. 290.—1 Story's Eq. 301.